**Harold C. BOROM, Plaintiff-Appellant,**

v.

**Curtis CRAWFORD, Director, United States Parole Commission, and Norman Carlson, Director, United States Bureau of Prisons, Defendants-Appellees.**

No. 79–1017.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1981.

Decided June 15, 1981.

Nancy J. Hertel, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Edward Moran, Frederick H. Branding, Asst. U.S. Attys., Chicago, Ill., for defendants-appellees.

Before SWYGERT, PELL and WOOD, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal concerns the scope of information a government agency must furnish under the Freedom of Information Act, 5 U.S.C. § 552, in response to a request that would require the agency to make difficult and costly compilations of raw data.

Plaintiff Harold C. Borom, an inmate of the Terre Haute, Indiana federal prison, filed identical F.O.I.A. requests with the United States Parole Commission and the United States Bureau of Prisons on October

---

17, 1977, requesting information over a six-year period (1972 to 1977) regarding the parole or early release of black and white federal prisoners.[1] On October 31, 1977, the Parole Commission responded in a letter stating that "[t]he data systems which we maintain do not capture information on race as this variable does not enter into parole decision making." The Bureau of Prisons provided some statistical reports in response to the request, but noted that the Bureau does not collect any data on early release and "does not compile statistics in . . . the categories you have requested" on commitment and discharge.[2]

On December 5, 1977, plaintiff filed this action in district court seeking to compel defendants Curtis Crawford, director of the Parole Commission, and Norman Carlson, director of the Bureau of Prisons, to disclose the requested information. The defendants responded with a motion for judgment on the pleadings and filed affidavits in support of their motion. The affidavit filed by the Parole Commission revealed that the Commission did not compile data that would be responsive to plaintiff's requests. The affidavit filed by the Bureau of Prisons indicated that it had provided plaintiff with all the records it maintained that were responsive to plaintiff's requests.

In essence, defendants' motion averred that the plaintiff was in receipt of all the records to which he was entitled under the Act. Because the motion contained material beyond the pleadings, the trial court treated the motion for judgment on the pleadings as one for summary judgment. The plaintiff was given twenty-five days to respond to the motion. No response was filed. The court thereafter granted summary judgment for the defendant, and this appeal followed. We affirm the judgment of the trial court.

Plaintiff contends that defendants possessed the requested data and, therefore, cannot avoid disclosure merely because their record-keeping systems do not compile and store the information in the precise form in which plaintiff has requested it. He further contends that the Act requires the compilation of the requested statistical data. We cannot agree with plaintiff's contentions.

A recent case that is instructive is *Krohn v. Department of Justice*, 628 F.2d 195 (D.C. Cir. 1980). In that case, the plaintiff requested information "in regard to each and every criminal case in which judgment was entered pursuant to Fed.R.Crim.P. 32(b) during 1977" in three district courts.[3] As in the case at bar, the defendant responded in

---

1. The requested information was described in a questionnaire submitted to each defendant by the plaintiff:

   For the years 1972, 1973, 1974, 1975, 1976 and 1977:
   1. How many blacks committed per year?
   2. How many whites committed per year?
   3. How many blacks paroled each year?
   4. How many whites paroled each year?
   5. How many blacks with indeterminate sentences paroled on or before their one-third date each year?
   6. How many whites with indeterminate sentences paroled on or before their one-third date each year?
   7. What is the present black/white population of the Bureau of Prisons?
   8. How many blacks were mandatorily released each year?
   9. How many whites were mandatorily released each year?

2. The full text of the Bureau's letter reads:
   The Bureau of Prisons does not compile statistics in precisely the categories you have requested on Commitment and Discharge

   data. The categories we use are "White" which includes Spanish Americans and "Other", which includes Blacks, Native Americans and Orientals. I am enclosing copies of our Commitment and Discharge tables for Fiscal Years 1972 thru 1976. Fiscal Year 1977 is not yet available.
   We do not collect data on the number of individuals who are paroled on or before their one-third date.
   With regard to your question about the Bureau of Prisons inmate population, enclosed are copies of our Fiscal Year 1976 reports on the Population by Age and Institution, Population by Institution and Selected Offenses and Population by Length of Sentence and Institution. Fiscal Year 1976 is the latest data available.
   Enclosed is also a copy of our September 30, 1977 Population by Race.

3. The plaintiff in *Krohn* requested the following information regarding each case:
   1) The District Court docket number of the case and which District Court;
   2) The name of the defendant;

a letter to the plaintiff that the information requested either did not exist or was not stored in the form in which he requested it. The defendant maintained that in order to collect the requested information dispersed throughout its records, it would be necessary for the agency to check the files of approximately five thousand criminal cases.[4] On the basis of that uncontroverted representation, the district court granted summary judgment for the defendant. In affirming the district court's judgment, the United States Court of Appeals for the District of Columbia stated:

> A reasonable description requires the requested record to be reasonably identified as a record not as a general request for data, information and statistics to be gleaned generally from documents which have not been created and which the agency does not generally create or require. Here the request is so broad and general as to require the agency to review the entire record of "each and every ... criminal case" in order to determine whether it contains any evidence of the data, information or statistics that appellant requests. Such request is fatally flawed by lack of a reasonable description.

*Id.* at 198 (citation omitted).[5]

We agree with the reasoning of the District of Columbia Court of Appeals. In the

3) The date on which judgment was entered;
4) The judgment imposed;
5) The name of the sentencing judge;
6) Whether or not the Government allocuted at sentencing in the case and, if so the recommendation, if any, to the judge with respect to sentencing;
7) The offense(s) (Citation to U.S.Code) of which the defendant was convicted;
8) The offense(s) (Citation to U.S.Code) with which the defendant was charged at the initiation of the criminal prosecution;
9) Whether or not the disposition of the criminal case involved a plea bargain and, if so, the terms of the plea bargain, including any agreement concerning the conduct of the Government at sentencing;
10) The name(s) of the attorney(s) for the defendant, including local counsel for the defendant, if any;
11) The name(s) of the attorney(s) for the United States.

instant case, to meet plaintiff's request for data would have required defendants to create records they did not maintain or were not required to maintain by law. Such a burden on a government agency was not contemplated by the Act.

Accordingly, the judgment of the district court is affirmed.

4. At oral argument in the case at bar, Government counsel stated and plaintiff's counsel agreed that to satisfy plaintiff's request could involve review of many thousands of case files.

5. *See also Goland v. Central Intelligence Agency,* 607 F.2d 339 (D.C. Cir. 1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), in which the court held:

> It is well established that an agency is not "required to reorganize [its] files in response to [a plaintiff's] request in the form in which it was made," and that if an agency has not previously segregated the requested class of records production may be required only "where the agency [can] identify that material with reasonable effort."

*Id.* at 353 (quoting *Irons v. Schuyler,* 465 F.2d 608, 615 (D.C.Cir.), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972) and *National Cable Television Ass'n, Inc. v. FCC,* 479 F.2d 183, 192 (1973)).