**XEROX CORPORATION**

v.

**The UNITED STATES.**

**No. 80–85T.**

United States Claims Court.

March 27, 1987.

**94**

H. Stewart Dunn, Jr., Washington, D.C., attorney of record for plaintiff. Michael F. Solomon and Ivins, Phillips & Barker, of counsel.

Kenneth C. Gobetz, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, attorney of record for defendant.

## MEMORANDUM ORDER

LYDON, Judge:

Plaintiff has moved for an order directing defendant to produce a copy of a letter dated April 18, 1986 from P.W. Fawcett, Inland Revenue, Policy Division (United Kingdom) to Philip E. Coates, Associate Commissioner (Operations), Internal Revenue Service (United States).

Previously, plaintiff sought production of this document. By Order dated July 2, 1986, the court refused to order production based on defendant's claim of privilege, as a state secret, "while negotiations between the Competent Authorities are imminent or pending." Plaintiff's present motion, emphasizing the above-quoted portion of the July 2, 1986 order, and advising that negotiations between the Competent Authorities have concluded, again seeks production of the April 18, 1986 letter. In his affidavit asserting the privilege, which underscored the July 2, 1986 order, the then-Acting Commissioner of Internal Revenue, James

I. Owens stated that "[a]fter discussions have been completed, I will reevaluate whether the diplomatic relations of the United States require that these documents remain secret." Defendant again asserts, as a defense to this production request, *inter alia*, the claim of privilege, as a state secret, and relies on the affidavit of Lawrence B. Gibbs (Gibbs), Commissioner of Internal Revenue Service.[1] The claim of privilege, now permanent in nature relative to this case, is again reconsidered by the court.

█ In the Gibbs' affidavit, it is stated that production of the April 18, 1986 letter "would impair the United States government's ability to deal with the tax authorities of foreign governments * * * by breaching the historic confidentiality of negotiations between the United States and foreign sovereigns * * *." While plaintiff argues to the contrary, the court is persuaded that the claim of privilege set forth in the Gibbs' affidavit is adequate to support the claim of privilege.[2] *See United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1954); *Xerox Corp. v. United States*, Cl.Ct. No. 80–85T (unpublished order, July 2, 1986). Since the claim of privilege sought herein is now permanent, the court has carefully reconsidered the asserted privilege. The fact that permanent protection by way of the privilege claim is now sought does not serve to render the claim less valid based on the presentation of the parties.

█ The question of *in camera* review by the court has been surfaced as a precautionary measure to ensure that the privilege is not in any way being abused. As pointed out in *Allen v. C.I.A.*, 636 F.2d 1287, 1298 (D.C.Cir.1980), courts are reluctant to conduct *in camera* inspections. *In camera* inspection is to be avoided unless it appears reasonably necessary. *Hydron*

---

1. Defendant also argues that the April 18, 1986 letter is not relevant to the issues presented in this case, and that production would be in violation of Article 26 of the Treaty in question. The parties vigorously contest these points but the court finds it unnecessary to resolve these differences since it disposes of the production matter on the state secret ground.

2. Plaintiff contends that "[n]obody could claim that the issue in Xerox's case is a sensitive one." However, that contention misses the point of the privilege and the thrust behind its assertion in this case as set forth in the Gibbs' affidavit. Finally, plaintiff's contention that defendant had waived the privilege is without merit.

*Laboratories, Inc. v. Environmental Protection Agency,* 560 F.Supp. 718, 722 n. 5 (D.R.I.1983). *See also Bogosian v. Gulf Oil Co.,* 738 F.2d 587, 595 (3d Cir.1984). Some have felt that exposure to the contents of *in camera* documents might "poison" subconsciously their view of the case one way or the other.[3] Indeed, on one occasion the court is aware of, a judge felt compelled to recuse himself because he felt his inspection of *in camera* documents served to contaminate him relative to his further handling of the case.

■ In the case at bar, plaintiff has failed to show to the court's satisfaction a compelling need for the April 18, 1986 letter. While the court agrees that the "[j]udicial control of the evidence cannot be abdicated to the caprice of executive officers", *United States v. Reynolds, supra,* 345 U.S. at 9–10, 73 S.Ct. at 532–33, it is also true that a presumption exists that public officials faithfully and properly perform the duties of their offices, *see Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978). There is no bad faith on the part of the Internal Revenue Service alleged or shown, nor is there a strong public interest in disclosure of the April 18, 1986 letter sufficient to call for an *in camera* inspection. See in this regard *Allen v. C.I.A., supra,* 636 F.2d at 1299, 1300. There is no indication that the privilege asserted herein was not properly invoked as to the substantive totality of the April 18, 1986 letter. Given the context in which the letter in question was written, it is reasonable to conclude that frank and honest expression of views on the treaty language in issue were expressed, views that ostensibly were expressed in the belief that "historic confidentiality" would govern such expressions. Confirmation of that fact by an *in camera* inspection would most probably be redundant. Finally, arguments which plaintiff believes can be derived from the April 18, 1986 document, i.e., that some members of the Competent Authority of the United Kingdom disagreed with the interpretation placed on certain portions of the treaty by members of the United States Competent Authority, ostensibly are available to plaintiff from other sources.

■ In *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 401 (D.C.Cir. 1984), the Court of Appeals for the District of Columbia Circuit employed the test laid down in *Ellsberg v. Mitchell,* 709 F.2d 51 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984) to determine when a court may or should make an *in camera* examination of material over which a state secret privilege claim is made. The court used a "sliding scale" to determine when *in camera* review is appropriate. *Northrop Corp. v. McDonnell Douglas Corp., supra,* 751 F.2d at 401. On one end of the scale, *in camera* review is "obligatory" when a litigant must lose if the privilege claim is upheld and the government's claim of privilege is "dubious." *Id.* On the other end, when a litigant has made only a trivial showing of need for the privileged material, and there would be a significant risk of serious harm if the material was disclosed, the privilege claim should be upheld without *in camera* review. *Id.*

The facts of this case present a situation that is more close to the end of the scale denying *in camera* review. Certainly, defendant's claim of state secret is not "dubious" and, as discussed above, significant harm could be done if sensitive tax negotiations with foreign governments were sub-

---

**3.** Plaintiff, relying on an observation made, *en passant,* in *Allen v. C.I.A.,* 636 F.2d 1287, 1298 (D.C.Cir.1980) (an FOIA case and exemptions relevant thereto), stresses that *in camera* inspection of a single document, i.e., the letter of April 18, 1986, would not require "herculean labors" on the part of the court and thus should be undertaken by the court. However, an *in camera* inspection, even of one document, should not be undertaken to satisfy the whim of a party that a searching inquiry is required if only to provide peace of mind. Nor should such an inquiry be required merely because the other side says it would comply with an order of the court which required *in camera* submission of the document in question to explore whether in fact the state secret claim of privilege covers all relevant parts of the document. In other words, *in camera* review should not be used routinely on the theory "it can't hurt." *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978).

ject to disclosure by *in camera* procedures. While plaintiff's claim is not viewed as trivial, as shown above, upholding the claim of state secret does not mean that plaintiff will automatically lose in the underlying litigation. Given the circumstances of the case at bar, the court finds that under the *Ellsberg—Northrop Corp.* test, *in camera* review of the April 18, 1986 letter is inappropriate. *See Northrop Corp. v. McDonnell Douglas Corp., supra,* 751 F.2d at 401.

In light of the above discussion, plaintiff's motion for production is denied.